# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**ALPHA RHO ALUMNI CORPORATION,**

    **Plaintiff,**

v.                                                        **CIVIL ACTION NO. 1:15-cv-44**
                                                                  **(Judge Bailey)**

**FIRST UNITED BANK AND
TRUST, INC.,**

    **Defendant.**

## MEMORANDUM ORDER AND OPINION
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Currently pending before this Court is Plaintiff Alpha Rho Alumni Corporation's ("Alpha Rho") Motion for Summary Judgment [Doc. 43], filed on February 26, 2016. On the same day, Defendant First United Bank and Trust, Inc., ("First United") also filed a Motion for Summary Judgment [Doc. 42]. Both parties filed their respective responses on March 18, 2016 [Docs. 49 and 50]. For the reasons set forth below, this Court grants Alpha Rho's Motion for Summary Judgment and denies First United's Motion for Summary Judgment.

## I. BACKGROUND

### A. Factual and Procedural History:

This is a removal action which was originally filed in the Circuit Court of Monongalia County, West Virginia, on February 5, 2015 [Doc. 1-1]. Defendant timely removed the case to this Court pursuant to 28 U.S.C. § 1332 on March 9, 2015 [Doc. 1]. This matter has proceeded without any major pretrial motions, aside from the current cross motions for

summary judgment.

On December 21, 2005, Alpha Rho obtained a loan from First United in order to finance the construction of a new fraternity house [Doc. 1-5 at ¶ 5; Doc. 4 at ¶ 5]. To that end, the parties executed a Construction Loan Agreement and a Promissory Note (hereinafter referred to individually as "the agreement" and "the note," respectively) for $2,700,000.00, secured by a Deed of Trust [Id. at ¶ 6; Id. at ¶ 5]. Together, the agreement and note constitute a binding contract between the parties (hereinafter referred to jointly as "the contract") and has formed the basis for this breach of contract action [Id. at ¶ 29; Id. at ¶ 29].

The contract provides for two distinct loan repayment periods, which each featured a distinct interest rate. First, the contract calls for an interest only payment period (hereinafter "interest only period"), which would begin on January 21, 2006, and required Alpha Rho to make "twelve consecutive monthly payments equal to the amount of unpaid interest accrued on the outstanding principal balance on this note" [Doc. 43-4 at 2; Doc. 43-5 at 1].[1] During the interest only period, interest would accrue "at a floating or fluctuating rate equal to the highest Prime Rate published in the Money Rates Column of the Wall Street Journal (hereinafter "WSJ Prime Rate"), adjusted contemporaneously with changes in the WSJ Prime Rate" [Doc. 43-4 at 3; Doc. 43-5 at 1]. It is clear from the evidence that the interest only period would apply "during the period of construction," which was originally

---

[1] This Court notes that while both Alpha Rho and First United have attached copies of the Agreement, Note, and Loan Modifications to their respective motions for summary judgment, this Court will cite only to plaintiff's copies of same for convenience purposes.

2

anticipated to take twelve months [Doc. 43-6; Doc. 43-4 at 3].[2]

The interest-only period was to be followed by a principal and interest period (hereinafter "principal and interest period"), which was initially scheduled to begin on January 21, 2007 [Doc. 43-4 at 3; Doc. 43-5 at 1], and required Alpha Rho to "make . . . one hundred seventy-nine monthly payments of principal and interest" [Id. at 2-3; Id.]. The loan repayment was to be completed on December 21, 2021, at which time Alpha Rho would make a final, "balloon payment equal in amount to the entire outstanding [balance of the loan, including interest]" [Doc. 43-5 at 1].

The contract also provides for different interest rates during each of these periods. Upon termination of the interest only period, Alpha Rho would then pay interest at the WSJ Prime Rate plus 0.25%, fixed for three year intervals and adjusted at the end of each interval at the then current WSJ Prime Rate plus 0.25% [Doc. 43-4 at 3]. On January 21, 2007, the date on which the fixed rate period was initially set to begin under the contract, the WSJ Prime Rate was 8.25% [Doc. 1-5 at ¶ 14]. However, construction on the subject fraternity house was still not complete at that time [Doc. 1-5 at ¶¶ 12; 15]. Accordingly, First United fixed the initial three year interest rate at 8.5%, and billed Alpha Rho for its first principal and interest payment to be due February 21, 2007 [Id.]. Alpha Rho paid that initial billed amount at the fixed interest rate in a timely manner and without objection [Id.; Doc. 42-8].

Due to those construction delays, the parties began discussions to extend the interest only period and the note maturity date [Id. at ¶ 15; Doc. 42-1 at 2]. On April 20,

---

[2] Of note, the Agreement specifically refers to the interest only period as the "Construction Interest Rate" period [Doc. 43-4 at 3].

3

2007, First United and Alpha Rho executed the first of three Loan Modification Agreements (hereinafter "the modifications"), which retroactively extended the length of the interest only period from January 21, 2007, to July 21, 2007, and extended the note maturity date by the same number of months [Id. at ¶ 16; Doc. 43-9]. In an April 2, 2007 memorandum from one First United employee, Steve Lantz, to another, David Kelley, Lantz specifically notes that the interest only period was intended to apply, "during the period of construction," and that construction delays have necessitated an extension of the interest only period [Doc. 43-7]. The parties then executed two additional modifications, which, together, extended the interest only period to February 21, 2009, changed the date of the first principal and interest payment to March 21, 2009, and changed the date of the final balloon payment to February 21, 2024 [Doc. 1-5 at ¶ 18; Doc. 43-10; Doc. 43-11].

Despite the fact that the modifications specifically extended the interest only period, First United billed and Alpha Rho paid interest at a fixed rate of 8.5% on the loan between January 21, 2007 and February 21, 2009 [Doc. 1-5 ¶¶ 17-20]. However, the WSJ Prime Rate fluctuated upward for a time, then varied steadily downward before ultimately holding steady at 3.25% on February 21, 2009 [Doc. 43-12].[3] Alpha Rho now claims that First United effectively behaved as if the modifications did not extend the fluctuating interest rate for the interest only period to February 21, 2009, and should have waited until that date to

---

[3] During the time that the interest only period should have applied, the WSJ Prime Rate fluctuated at the following rates: December 21, 2005, 7.25%; January 31, 2006, 7.5%; March 28, 2006, 7.75%; May 10, 2006, 8%; June 29, 2006, 8.25%; September 18, 2007, 7.75%; October 31, 2007, 7.5%; December 11, 2007, 7.25%; January 22, 2008, rcent 6.50%; January 30, 2008, 6%; March 18, 2008, 5.25%; April 30, 2008, 5%; October 8, 2008, 4.5%; October 29, 2008, 4%; December 16, 2008, 3.25%; and, finally, it remained at 3.25% until February 21, 2009 [Doc. 43-12].

fix the interest rate at 3.5% [Doc. 43-1 at 5-6]. As such, Alpha Rho now claims that it is entitled to damages that it incurred due to First United's overbilling the interest rates during the interest only period and for the incongruence incurred when the interest rate was fixed at 8.5% instead of 3.5% [Id.].

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." **Temkin v. Frederick County Comm'rs**, 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992) (citing **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in **Anderson**, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see*

5

also ***Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing ***Stevens v. Howard D. Johnson Co.***, 181 F.2d 390, 394 (4th Cir. 1950)). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See* ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Id.*** at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

### III. DISCUSSION:

**A. The Standard for Interpreting this Contract:**

It has long been settled in West Virginia that "[i]t is province of the Court, and not of the jury, to interpret a written contract." Syl. Pt. 1, ***Stephens v. Bartlett***, 118 W.Va. 421, 191 S.E. 550 (1937). When reading the contract and the modifications, this Court is mindful of a "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other." ***Mastrobuono v. Shearson Lehman Hutton, Inc.***, 514 U.S. 52, 63 (1995); *see also*

Restatement (Second) of Contracts §§ 202(5), 203(a), and Comment b. "'[I]n construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all parts together, and giving effect to the intention of the parties whenever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith.'" **Cabot Oil & Gas Corp. v Huffman**, 227 W.Va. 109, 118, 705 S.E.2d 806, 815 (2010) (internal citation omitted). A contract should not be interpreted "merely by a consideration of disjointed or disconnected parts thereof." **Stephenson v. Kuntz**, 131 W.Va. 599, 612 (1948). Accordingly, in rendering its decision, this Court is mindful to read the contract and the modifications together in order to give effect to the intention of the parties.

Next, this Court must determine whether the contract provisions at issue are clearly expressed. "Where parties contract lawfully and their contract is free from ambiguity or doubt, their agreement furnishes the law which governs them. It is the duty of the court to construe contracts as they are made by the parties thereto and to give full force and effect to the language used, when it is clear, plain, simple and unambiguous." **Rollyson v. Jordan**, 205 W.Va. 368, 376, 518 S.E.2d 372, 380 (1999) (internal citations omitted). "A contract using plain and unambiguous language is to be enforced according to its plain intent and should not be construed." Syl. Pt. 2, **Orteza v. Monongalia County General Hospital**, 173 W.Va. 461, 318 S.E.2d 40 (1984) (*citing* Syl. Pt. 2, **Bethlethem Mines Corp. v. Haden**, 153 W.Va. 721, 172 S.E.2d 126 (1969)). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. [Instead, t]he question as to whether a contract is ambiguous is a question of law to be determined by the court."

7

Syl. Pt. 1, ***Berkeley County Public Service Dist. v. Vitro Corp. of America***, 152 W.Va. 252, 267, 162 S.E.2d 189, 200 (1968). When contract language is unclear, it is considered ambiguous. *Id.* Accordingly, this Court must decide as a matter of law whether the language of the contract and modifications is clear and unambiguous.

**B**. **The Plain Language of the Agreement, Note, and Loan Modifications Dictate that Summary Judgment Must be Granted for Alpha Rho**:

The core issue at bar is whether the modifications clearly and unambiguously modified the original contract to extend the interest only period. As noted above, it is undisputed that the original contract is comprised of both the agreement and the note, and that the contract contained separate interest rate provisions for the interest only period and the principal and interest period [Doc. 43-4 at 2; Doc. 43-5 at 1]. It is also undisputed that due to construction delays on the subject fraternity house, the parties entered into further agreements on April 20, 2007 [Doc. 43-9], August 17, 2007 [Doc. 43-10], and January 18, 2008 [Doc. 43-11], which modified the original contract. Accordingly, this Court must construe that original contract "as a whole," or, stated differently, in tandem with the modifications. See ***Cabot Oil & Gas Corp.***, 227 W.Va. at 118, 705 S.E.2d at 815.

The language of the contract is clear. Two key provisions, one from the note and another from the modifications, when read together, indicate that the parties intended for the interest rate to remain in flux during the interest only period contemplated by the modifications. Paragraph 4(a) of the note, which begins with the header, "Interest Rate," provides:

> "During the Interest Only Period . . . the outstanding principal balance on this Note shall accrue interest at a floating or fluctuating rate equal to the highest . . . WSJ Prime Rate . . . per annum, adjusted contemporaneously with

changes in the WSJ Prime Rate."

[Doc. 43-5 at 2]. Next, as noted above, the modifications effectively extended the end date of the interest only period from the date provided for in the contract, January 21, 2007, to a modified end date of February 21, 2009 [Docs. 43-9, 43-10, and 43-11]. Importantly, paragraphs 4(a) of each modification features nearly identical language. For example, in the third modification, that paragraph provide:

> ***[Alpha Rho] shall make monthly 'interest only' payments up to and including February 21, 2009*** (emphasis added);

[Doc. 43-11]. Pursuant to this language, it is clear that the parties intended that modifications extended not only the *time* of the interest only period, but also the fluctuating rate distinctive of that period. In 4(a) of the note, the date for interest only payments is not mentioned at any point. Instead, that period is only described with reference to itself as, "the interest only period," and is specifically differentiated as being a period where the interest rate on the note was to fluctuate. As such, First United should have allowed the interest rate to fluctuate from December 21, 2005 to February 21, 2009, instead of fixing that rate on January 21, 2007. Additionally, because the interest only period and rate were extended by the modifications, the interest rate as to the principal and interest period should not have been fixed on January 21, 2007 at 8.5%; instead, the interest and principal period rate should have been fixed on February 21, 2009, at 3.5% [Doc. 43-12].

First United argues that the Loan Modifications simply modified the time period for the interest only period and principal and interest period, but did not change the contractual provisions regarding the applicable interest rates to be charged during those periods. Specifically, they argue that, "[i]f the parties intended to change the interest calculation

9

during this period from the fixed rate back to the floating rate," it should have been expressed, "by these sophisticated parties" [Doc. 42-1 at 9]. Such an interpretation would require this Court to turn a blind eye to the language of the modifications cited above [Doc. 43-11]. When reading the contract and modifications as a whole, it is clear that the parties intended to extend the interest only period date and its requisite fluctuating rate calculation.

Furthermore, other provisions within the contract require this Court to adopt that interpretation. First, the agreement specifically states that "[u]pon the termination of the **Construction Interest Rate** (emphasis added), the Loan shall bear interest of WSJ Rate plus one quarter percent (0.25%)." [Doc. 43-4 at 3]. This provision indicates that January 21, 2007, was not a hard and fast date selected for any reason other than that the end of the interest only period was selected to coincide with the anticipated end of construction on the fraternity. As such, when the parties entered into the modifications to extend the interest only period of the loan to accommodate the delays in construction, all terms of the interest only period set forth in the contract, including the formula for calculating the applicable interest rate, were also extended.

In conclusion, this Court finds that the contested terms of the contract and modifications are unambiguous. As such, the modifications effectively changed the end date for interest only payments at a fluctuating rate on the loan from January 21, 2007 to February 21, 2009. First United improperly fixed the loan interest rate at 8.5% on January 21, 2007, and it should have billed Alpha Rho at a fluctuating rate up through February 21, 2009, in accordance with the terms of the original contract in the interest only period. Accordingly, First United is liable for contractual damages to Alpha Rho for its failure to correct the interest rate up through the present day.

**C. Alpha Rho is Entitled to Pre-Judgment Interest**:

Alpha Rho argues that as a result of First United's failure to charge the correct rate of interest throughout the course of the contract, it has overpaid an amount of $309,305.43 as of November 25, 2015 [Doc. 43-1 at 13-14]. Because plaintiff's damages collect interest at three percentage points above the Fifth Federal Reserve District secondary discount rate under West Virginia law, pursuant to W.Va. Code § 56-6-31(a), Alpha Rho argues that it is owed an additional $142,816.05 in prejudgment interest as of December 21, 2015 [Id.]. However, as First United correctly argues, W.Va. Code § 56-6-31(a) provides that prejudgment interest is only recoverable on special damage awards. ("That if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of special or liquidated damages shall bear interest at the rate in effect for the calendar year in which the right to bring the same shall have accrued . . ."). *See also* **Beard v. Lim**, 185 W.Va. 749, 752, 408 S.E.2d 772, 775 (1991) ("It is undisputed that the controlling statutory law in West Virginia provides for the award of prejudgment interest on special damage awards."). First United is correct in that W.Va. Code § 56-6-31 does not apply to this action.

Instead, a separate provision within the West Virginia Code governs the prospective interest amount that Alpha Rho may recover. Pursuant to W.Va. Code § 56-6-27, "in any action founded on contract, [the Court] may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict." *See also* **Bd. of**

11

*Educ. of McDowell Cty. v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 610, 390 S.E.2d 796, 809 (1990) ("A cursory reading of W.Va. Code § 56–6–27, clearly demonstrates that an award of interest in a contract action is not limited to cases in which the amount in question is undisputed. Interest is allowable 'in any action founded on contract.'"). Accordingly, Alpha Rho may recover prejudgment interest pursuant to W.Va. Code § 56-6-27.

## IV. CONCLUSION

For the reasons stated above, this Court hereby **DENIES** Defendant First United's Motion for Summary Judgment **[Doc. 42]** and **GRANTS** Plaintiff Alpha Rho's Motion for Summary Judgment **[Doc. 43]**. This Court further orders that both parties submit affidavits as to the damages that Alpha Rho has sustained in this breach of contract action, including prejudgment interest as provided for in W.Va. Code § 56-6-27, by April 22, 2016.

It is so **ORDERED**.

The Clerk of Court is directed transmit copies of this Order to all counsel of record.

**DATED**: April 8, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE